# EXHIBIT A

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI
TWENTY-FIRST JUDICIAL CIRCUIT

BEN DOGRA,

     Plaintiff,

v.

RUSTY HARDIN, RUSTY HARDIN AND
ASSOCIATES, LLP; and DOES 1 through 20,

     Defendants.

Cause No. 21SL-CC03080

Division:  17


**<u>APPENDIX</u>**


GRAY, RITTER & GRAHAM, P.C.


By: **<u>/s/Maurice B. Graham</u>**
    Maurice B. Graham     #18029
    Morry S. Cole     #46294
    Attorneys for Defendants Rusty Hardin
    and Rusty Hardin & Associates, LLP
    701 Market Street, Suite 800
    St. Louis, MO  63101-1826
    (314) 241-5620; Fax: (314) 241-4140
    mgraham@grgpc.com
    mcole@grgpc.com

- 1 -

## TABLE OF CONTENTS

| Description | Pages |
|---|---:|
| Docket Sheet | 000001 |
| Petition – Legal Malpractice | 000002-000013 |
| Summons Issued For Service on Defendant Rusty Hardin | 000015-000017 |
| Summons Issued For Service on Defendant Rusty Hardin and Associates, LLP | 000018-000021 |

1949145 / 27 / 210509



Click here to eFile on Case
Click here to Respond to Selected Documents

Sort Date Entries:  ● Descending
                    ○ Ascending

Display Options: All Entries ▼

---

**07/08/2021** ☐ **Summ Issd- Circ Pers Serv O/S**
Document ID: 21-SMOS-671, for RUSTY HARDIN AND ASSOCIATES, LLP.Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Summ Issd- Circ Pers Serv O/S**
Document ID: 21-SMOS-670, for HARDIN, RUSTY.Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**07/07/2021** ☐ **Filing Info Sheet eFiling**
**Filed By:** WILLIAM K. MEEHAN

☐ **Note to Clerk eFiling**
**Filed By:** WILLIAM K. MEEHAN

☐ **Pet Filed in Circuit Ct**
Petition - Legal Malpractice.
**Filed By:** WILLIAM K. MEEHAN
**On Behalf Of:** BEN DOGRA

☐ **Judge Assigned**
DIV 17

---

Case.net Version 5.14.19          Return to Top of Page          Released 07/15/2021

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY,
STATE OF MISSOURI

| | |
|---|---|
| BEN DOGRA, an individual | ) |
| | ) |
| | ) Cause No.: |
| Plaintiff, | ) |
| | ) Division No. |
| vs. | ) |
| | ) |
| RUSTY HARDIN, an individual; RUSTY | ) |
| HARDIN AND ASSOCIATES, LLP; and | ) |
| DOES 1 through 20, inclusive, | ) |
| **SERVE AT** | ) |
| **401 McKinney Street, #2250** | ) |
| **Houston, TX 77010** | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## PETITION – LEGAL MALPRACTICE

COMES NOW Plaintiff Ben Dogra ("Dogra"), by and through his counsel, and for his causes of action against defendants Rusty Hardin ("Hardin"), Rusty Hardin and Associates, LLP ("RHA"), and Does 1 through 20 (collectively, "Defendants"), does state and allege as follows:

### PARTIES

1.      Plaintiff Dogra is an individual.  At all relevant times, Dogra resided in St. Louis County, Missouri.

2.      Defendant Hardin is an individual.  Upon information and belief, at all relevant times, Hardin resided in and continues to reside in Harris County, Texas.  Hardin is an attorney and the founding partner of RHA.

3.      Upon information and belief, RHA is a limited liability partnership law firm. During all relevant times, RHA was and now is doing business in Harris County, Texas.

4.      The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as Does 1 through 20, inclusive, are unknown to Dogra who therefore sues said Defendants by such fictitious names.  Dogra alleges on information and belief that each of the Defendants, including those designated as a Doe, are

1

000002

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

responsible for the events alleged herein and the damages caused thereby as a principal, agent, co-conspirator or aider and abettor.  Dogra will seek leave of Court to amend this Petition to allege the true names and capacities of such Defendants when the same have been ascertained. Upon information and belief, Defendants, at all times relevant to this action, were the agents, servants, partners, joint venturers and/or employees of Hardin and/or RHA, and, in doing the acts alleged herein, were acting with the knowledge and/or consent of those defendants.

5.      This Petition arises out of events and transactions that occurred in St. Louis County, Missouri, in particular a certain arbitration proceeding.

## FIRST CAUSE OF ACTION

### Legal Malpractice/Professional Negligence

### (Dogra against all Defendants)

6.      Dogra realleges herein by this reference each and every allegation contained in paragraphs 1 through 5, inclusive, of this Petition as if set forth fully herein.

7.      Dogra, a professional sports agent, was previously an employee of non-party CAA Sports, LLC ("CAA") pursuant to a certain Employment Agreement effective January 1, 2012 (the "Employment Agreement").  CAA is a sports agency that represents professional athletes and other sports personalities and professionals, including coaches.  While employed by CAA, Dogra supervised CAA's football division from St. Louis County, Missouri.

8.      Or November 13, 2014, CAA wrongfully terminated Dogra's employment without cause.  Because Dogra's employment was terminated without cause, Dogra was contractually entitled under the Employment Agreement to various categories of CAA client revenues.  CAA, however, breached and repudiated the Employment Agreement by failing to pay Dogra various amounts that were due and owing under the Employment Agreement as a result of CAA's termination of Dogra's employment.

9.      In late 2014, Dogra retained Hardin and RHA to specifically represent him against CAA in connection with CAA's wrongful termination of Dogra and CAA's breaches of the Employment Agreement.  Accordingly, there was an attorney-client relationship between Dogra, on the one hand, and Hardin and RHA, on the other hand.

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

10.     On or about February 27, 2015, Hardin and RDA initiated arbitration proceedings on Dogra's behalf against CAA by filing a Demand for Arbitration with the American Arbitration Association ("AAA") in St. Louis, Missouri entitled *Ben Dogra v. CAA Sports, LLC*, AAA Case No. 01-15-0002-7781 (the "Arbitration").  For some period of time, Hardin and RHA were attorneys of record for Dogra in the Arbitration.  M. David Vaughn was the arbitrator in the Arbitration (the "Arbitrator").

11.     In the Arbitration, Dogra, as claimant, sought to recover damages from CAA, as respondent, based on, among other things, CAA's breach of the Employment Agreement. Specifically, pursuant to Section L(i) of the Employment Agreement, CAA was required to pay Dogra, among other things, "[a]fter the Term, all coaching client revenue for [CAA] coaching clients signed after January 1, 2012" until the earlier of three years after the term or "the termination of any such individual coaching client's employment agreement."  In breach of the Employment Agreement, CAA failed to pay Dogra such amounts and repudiated its obligation to do so.

12.     A multi-day evidentiary hearing occurred in the Arbitration on various dates in February through April 2016.  At the evidentiary hearing in the Arbitration, CAA presented testimony from a purported expert witness, Paul Meyer, concerning CAA's coaching revenue. Using unverified CAA data, CAA's purported expert calculated the coaching revenue under Section L(i) of the Employment Agreement collected by CAA during the relevant time period to amount to $2,756,503.

13.     Following completion of the evidentiary hearing, Hardin and RHA submitted a Post-Hearing Brief signed by Hardin.  Among other things, the Post-Hearing Brief reiterated that CAA's expert concluded that the coaching revenue at issue purportedly totaled $2,756,503. Remarkably, the Post-Hearing Brief stipulated and agreed to CAA's proffered $2,756,503 figure. Moreover, Hardin and RDA failed to either request an accounting and audit of CAA's coaching revenue, or to at least reserve Dogra's rights to do so.  Specifically, the Post-Hearing Brief stated in relevant part as follows:

> CAA then prepared a rebuttal report, which was critical of Dr. Rishe's data and findings.  Using CAA data, the rebuttal report calculated the coaching revenue

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

represented by Section L(i) collected from November 14, 2014 to November 13, 2017 to amount to **$2,756,503**. At the hearing, CAA's rebuttal expert stood by his analysis and this amount. [Footnote]   **Although this amount is subject to criticism, Claimant has accepted this figure for the purposes of this requested award**.

(Post Hearing Brief, p. 108)(Emphasis Added).

14.     The Post-Hearing Brief also stated in relevant part as follows:

<u>Understated Coaching Revenue</u>. The requested award accepts the coaching client revenue calculations made by CAA's damages consultant Paul K. Meyer, even though Mr. Meyer's analysis is subject to criticism.

(Post Hearing Brief, p. 99).

15.     On July 18, 2016, the Arbitrator issued an Opinion and Award.  In the Opinion and Award, the Arbitrator found, among other things, that CAA had breached Section L(i) of the Employment Agreement and that Dogra was entitled to certain CAA coaching client revenues. In the Opinion and Award addressing Dogra's damages, the Arbitrator awarded Dogra, among other things, $2,756,503 in damages based on CAA's failure to pay Dogra CAA's coaching client revenues as required by Section L(i) of the Employment Agreement.   Of particular importance, the Arbitrator found that Dogra agreed with the amount proffered by CAA in his Post-Hearing Brief.  Specifically, the Opinion and Award stated in relevant part as follows:

Section L(i) of the Employment Agreement also gives Dogra "all coaching client revenue for coaching clients signed after January 1, 2012" until the earlier of three years after the term or "the termination of any such individual coaching client's employment agreement."   **At the hearing, CAA's rebuttal expert witness calculated that coaching revenue collected or to be collected by CAA amounts to $2,756,503.  In his PHB, Dogra agrees that this amount is appropriate. As a result, I find that CAA owes Dogra $2,756,503 for coaching revenue under Section L(i) of the Employment Agreement**.

(Opinion and Award, p. 27) (Emphasis added).

16.     Moreover, Paragraph 6 of the Opinion and Award provides as follows:

Claimant is entitled to payment for client revenue based on his entitlement under applicable coaching contracts from January 1, 2014 and forward for such contracts on the books at the time of his termination and for all coaching clients signed after January 1, 2012 until the earlier of three years after the term or the termination of any such individual coaching client's employment agreement. CAA shall pay Dogra $2,756,503 for coaching revenue pursuant to Section L(i) of the Employment Agreement.

000005

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

(Opinion and Award, p. 30).

17.     In the Opinion and Award, the Arbitrator also found that CAA had breached the Employment Agreement by failing to pay Dogra other categories of CAA's revenues such as marketing revenue, consulting revenue and player contract revenue.  For all categories of claims in which the amount of damages were "in dispute", the Arbitrator ordered the parties to undertake an "audit" to calculate those damages.  (Opinion and Award, p. 31 [¶ 17]).

18.     In August and September 2016, Dogra and CAA filed briefs in the Arbitration seeking clarification as to certain issues raised in the Opinion and Award, including clarification as to the language of Paragraph 6 of the Opinion and Award which relates to CAA's coaching revenue.  In doing so, Hardin and RHA attempted to retract their prior stipulation to the $2,756,503 figure, and stated that Dogra was actually entitled to coaching revenue that exceeded that amount.  Moreover, in an effort to try to justify Hardin's and RHA's stipulation to that amount, Hardin and RHA dubiously stated that "Mr. Dogra did not dispute this calculation during the hearing in an effort to avoid belaboring the proceedings and to increase the conservatism of Mr. Dogra's own damages analysis, [FN] but Mr. Dogra *does* dispute that the same amount adequately reflects commissions 'from January 1, 2014' as the Award clearly requires."

19.     On September 29, 2016, the Arbitrator issued a First Supplemental Opinion and Award.  In the First Supplemental Opinion and Award, the Arbitrator summarized the particular dispute at issue as "whether there is any opportunity for Claimant [Dogra] to increase this Award amount, since the Award was stated as a sum certain." (First Supplemental Opinion and Award, p. 9).  The Arbitrator ruled that since Dogra had "specifically agreed" in his Post-Hearing Brief to the $2,756,503 figure advanced by CAA, Dogra was bound to that agreement, and could not potentially increase that figure through an audit of CAA's records.  Specifically, the Arbitrator ruled as follows:

> CAA argues that Dogra gets only $2,756,503 in coaching revenue.  This figure is a sum certain and cannot be increased nor subject to audit. [¶]  Dogra argues that he is not limited to receiving only $2,756,503.  He claims that the figure is subject to audit which audit may reveal that he may be entitled to more coaching revenue.

5

000006

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

> **[¶]   Given that Dogra specifically agreed to this figure in his Post-hearing brief, the Award reflects this agreement.  It is too late for the Claimant to take back his agreement with this figure**. As a result, the awarded sum certain for coaching revenue remains as stated in the Award.

(First Supplemental Opinion and Award, p. 9)(Emphasis added).

20.     In or around 2018, pursuant to the Arbitrator's Opinion and Award and supplemental Opinions and Awards issued in the Arbitration, Dogra and CAA engaged in an audit of CAA's books and records to determine specific amounts that may be owed under the Arbitrator's Opinions and Awards.

21.     The audit revealed that the $2,756,503 figure that purportedly reflected CAA's coaching revenue that Hardin and RHA caused Dogra to agree to in the Post-Hearing Brief, was grossly understated.  Specifically, the audit revealed that for the coaches that CAA's purported expert included in his calculation of the $2,756,503 figure, CAA's expert excluded upwards of approximately $2 million in additional coaching revenue that Dogra was entitled to under Section L(i) of the Employment Agreement and that Dogra should have recovered from CAA in the Arbitration.  The audit also revealed that CAA realized even more coaching revenue in the approximate amount of $5.7 million from a number of coaches that were not included in CAA's expert's calculation of the $2,756,503 figure.  Upon information and belief, Dogra was entitled to at least some of that additional coaching revenue under Section L(i) of the Employment Agreement which he also should have recovered from CAA in the Arbitration.  Accordingly, the $2,756,503 figure that Hardin and RHA agreed to was understated by upwards of approximately $7.7 million.

22.     Hardin and RHA were negligent in their representation of Dogra in that they failed to exercise the degree of skill, care, prudence and/or diligence ordinarily used under the same or similar circumstances by reasonably careful members of the legal profession.  Specifically, Hardin and RHA were negligent in that they should not have stipulated and agreed to the amount of coaching damages proffered by CAA and its purported expert.  Hardin's and RHA's conduct was especially negligent given the fact that Hardin and RHA knew that CAA's purported expert's calculations were not independently verified and were subject to criticism.

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

Rather than stipulate and agree to the amount proffered by CAA and its purported expert, Hardin and RHA should have undertaken additional efforts to reasonably verify and/or discover the true amount of CAA's coaching revenues for the relevant timeframe.  Hardin and RHA should have sought an accounting and/or to audit CAA's books and records, or at a minimum, adequately reserved Dogra's rights to do so.  Hardin and RHA were also negligent in that they failed to undertake adequate discovery from CAA prior to the evidentiary hearing concerning CAA's coaching revenues for the relevant timeframe.

23.    But for the negligence of defendants Hardin and RHA, Dogra would have recovered additional coaching revenue damages from CAA in the Arbitration that were revealed through the subsequent audit that was mandated by the Arbitrator.

24.    Dogra sustained significant damages in the form of additional coaching revenue damages that CAA would have been required to pay to Dogra.  Specifically, Dogra has been damaged in the approximate amount of $5.7 million as a direct and proximate result of the negligence of Hardin and RHA.

<u>**SECOND CAUSE OF ACTION**</u>

**Breach of Contract**

**(Dogra against all Defendants)**

25.    Dogra realleges herein by this reference each and every allegation contained in paragraphs 1 through 24, inclusive, of this Petition as if set forth fully herein.

26.    In or around the fall of 2015, months after Hardin and RHA had initiated the Arbitration on Dogra's behalf, Hardin and RHA agreed to charge Dogra a purported $1.575 million "flat fee" (the "Fee") for their representation in the Arbitration.  More specifically, in exchange for the $1.575 million Fee, Hardin and RHA agreed to serve as "lead counsel through the resolution in arbitration or a trial court in your affirmative arbitration claims against [CAA] in [the Arbitration] seeking, among other things, enforcement of your employment agreement with CAA" (the "Fee Agreement").  On or about October 14, 2015, Hardin and RHA sent a letter to Dogra memorializing the Fee Agreement in writing, including the scope of their representation and what the Fee covered.

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

27.     Though Dogra paid Hardin and RHA the entire Fee well before the contemplated engagement was completed, the Fee was not non-refundable and was not earned upon receipt. Stated differently, Hardin and RHA would be required to refund at least a portion of the Fee if they did not serve as lead counsel through the resolution of the Arbitration, and in turn, did not perform services sufficient to merit the retention of the entire Fee.

28.     Dogra performed all obligations, conditions, and duties imposed upon him by the Fee Agreement except insofar as such performance was waived, excused or prevented by reason of the acts and omissions of RHA and/or Hardin.  Specifically, Dogra paid RHA the Fee.

29.     Prior to the 2016 evidentiary hearing in the Arbitration, Dogra began to lose confidence in Hardin and RHA.  Among other things, it became apparent that Hardin was less and less engaged, focused and interested in Dogra and the Arbitration.  Hardin's role and involvement as lead counsel decreased significantly as the Arbitration progressed.  By the time the Opinion and Award was issued in July 2016, Hardin had ceased taking an active role in representing Dogra in the Arbitration.  In fact, Hardin's role in representing Dogra in the Arbitration became virtually non-existent.

30.     Following the issuance of the Opinion and Award in July 2016, the Arbitration continued for approximately five (5) more years through at least approximately May 2021 when the Arbitrator issued a final Sixth Supplemental Opinion and Award.  In the interim, between July 2016 and May 2021, Dogra and CAA continued to actively arbitrate various significant disputes in the Arbitration, including without limitation, disputes related to damages, disputes related to interest, further liability issues and an audit.  In the interim, between July 2016 and May 2021, the Arbitrator also issued six (6) supplemental opinions and awards, including the final Sixth Supplemental Opinion and Award.  Moreover, in November 2018, CAA initiated judicial proceedings in the United States District Court for the Eastern District of Missouri to attempt (unsuccessfully) to vacate one of the Arbitrator's supplemental opinions and awards in the Arbitration.  Dogra, through counsel, was required to oppose CAA's attempts to vacate the arbitration award.  CAA would later contend that the Arbitrator's jurisdiction had lapsed. Consequently, in 2019, Dogra, through his counsel, was also required to commence judicial

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

proceedings in the United States District Court for the Eastern District of Missouri to compel CAA to continue the Arbitration which had yet to be resolved.  Dogra was successful in doing so.

31.     Although the Arbitration continued for at least five (5) additional years beyond the issuance of the July 2016 Opinion and Award, RHA's role in the Arbitration after July 2016 rapidly diminished to the point that it became virtually non-existent.  Following the issuance of the Opinion and Award in July 2016, Jeremy Monty, an attorney at RHA, continued to represent Dogra non-exclusively in the Arbitration for a period of time, albeit in a more limited capacity. Monty's role, however, decreased significantly as the Arbitration progressed.  Like Hardin, Monty ceased taking an active role in the Arbitration.  In fact, his role in representing Dogra in the Arbitration became virtually non-existent.  In 2017, attorneys other than RHA became lead counsel for Dogra in the Arbitration.  In 2017 and 2018, attorneys other than RHA performed almost all of the legal services for Dogra in connection with the Arbitration.

32.     In or around October 2018, Monty left RHA.  As of October 2018, RHA ceased representing Dogra in any capacity in the Arbitration or any related proceeding.   From approximately October 2019 through the present, Dogra was exclusively represented in the Arbitration and related proceedings by attorneys other than RHA.

33.     Because Hardin and RHA did not serve as lead counsel through the resolution of the Arbitration, they were required to refund some portion of the Fee that they had already collected but was not fully earned.  Hardin's and RHA's retention of the entire Fee would be unreasonable.  Hardin and RHA were only entitled to retains a portion of the Fee that reflected the reasonable value of the legal services rendered.

34.     Hardin and  RHA materially breached the Fee Agreement by failing to refund the portion of the Fee that they had already collected but was not fully earned.

35.     As a direct and proximate result of Hardin's and RHA's breaches, Dogra has suffered and continues to suffer damages in an amount to be proven at trial.

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

**THIRD CAUSE OF ACTION**

**(Alternatively, Breach of the Implied Covenant of Good Faith and Fair Dealing against Hardin and RHA)**

36.     Dogra realleges herein by this reference each and every allegation contained in paragraphs 1 through 35, inclusive, of this Petition as if set forth fully herein.

37.     In every contract, including the Fee Agreement, there is an implied promise of good faith and fair dealing.  As a result, Hardin and RHA were prohibited from doing anything to unfairly interfere with Dogra's rights and benefits under the Fee Agreement.

38.     As previously alleged, Dogra, Hardin and RHA entered into the Fee Agreement.

39.     Dogra performed all obligations, conditions, and duties imposed upon him by the Fee Agreement except insofar as such performance was waived, excused or prevented by reason of the acts and omissions of RHA and/or Hardin.  Specifically, Dogra paid RHA the Fee.

40.     Any conditions required for Hardin's and RHA performance, in particular their refund of at least a portion of the Fee, has occurred.

41.     Hardin and RHA have unfairly prevented Dogra from receiving all of the benefits under the Fee Agreement.  Again, Because Hardin and RHA did not serve as lead counsel through the resolution of the Arbitration, they were required to refund a portion of the Fee that they had already collected but was not fully earned.  Hardin's and RHA's retention of the entire Fee would be unreasonable.  Hardin and RHA were only entitled to retains a portion of the Fee that reflected the reasonable value of the legal services rendered.   By failing to refund a portion of the Fee, Hardin and RHA breached the implied covenant of good faith and fair dealing.

42.     As a direct and proximate result of Hardin's and RHA's breach, Dogra has suffered and continue to suffer damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**(Money Had and Received against Hardin and RHA)**

43.     Dogra realleges herein by this reference each and every allegation contained in paragraphs 1 through 42, inclusive, of this Petition as if set forth fully herein.

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM

44.     As alleged above, Hardin and RHA received Dogra's money, the Fee.

45.     Hardin and RHA collected and received a benefit from Dogra's money.

46.      Hardin's and RHA's retention of the entire Fee would be unjust.  Again, because Hardin and RHA did not serve as lead counsel through the resolution of the Arbitration, they were required to refund some portion of the Fee that they had already collected but was not fully earned.  Hardin's and RHA's retention of the entire Fee would be unreasonable.  Hardin and RHA were only entitled to retains a portion of the Fee that reflected the reasonable value of the legal services rendered.

47.      As a direct and proximate result of Hardin's and RHA's unjust retention of the entire Fee, Dogra has suffered and continue to suffer damages in an amount to be proven at trial.

WHEREFORE, Dogra prays for judgment in its favor against defendants Hardin, RHA and Does 1-20, and each of them, as follows:

1.     For damages in an amount in excess of $25,000, to be proven at the time of trial;

2.     For pre-judgment interest at the maximum rate permitted by law;

3.     For the costs of suit incurred herein; and

4.     For such other and further relief as this Court may deem just and proper.

Dated:  July 7, 2021                    **MEHAN LAW FIRM**

By: */s/ William K. Meehan*
William K. Meehan, Esq. (#33686)
Attorneys for Plaintiff
7165 Delmar Blvd., Suite 112
University City, MO 63130
Telephone: (314) 725-9994
Facsimile: (314) 721-9110
Email: wkmeehan@wkmeehanpc.com

Dated:  July 7, 2021                    **FREEDMAN + TAITELMAN, LLP**


By: */s/ Jesse A. Kaplan*
Bryan J. Freedman, Esq. (CA #151990)
Jesse A. Kaplan, Esq. (CA # 255059)
(Pro Hac Vice Admission Pending)
Attorneys for Plaintiff
FREEDMAN + TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, CA 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045
Email: bfreedman@ftllp.com
         jkaplan@ftllp.com

12

Electronically Filed - St Louis County - July 07, 2021 - 04:39 PM



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  21SL-CC03080 |
|---|---|
| Plaintiff/Petitioner:<br>BEN DOGRA<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>WILLIAM K. MEEHAN<br>7165 DELMAR, SUITE 112<br>UNIVERSITY CITY, MO  63130 |
| Defendant/Respondent:<br>RUSTY HARDIN | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Pers Injury-Malpractice | |

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  RUSTY HARDIN
Alias:

401 MCKINNEY STREET
SUITE 2250
HOUSTON, TX  77010

*COURT SEAL OF*

*ST. LOUIS COUNTY*

 You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
 SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

08-JUL-2021
Date                                                                    _____
Further Information:                                                                    Clerk
MT

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
    .
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____                    _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server
**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one)    ☐ the clerk of the court of which affiant is an officer.
                     ☐ the judge of the court of which affiant is an officer.
*(Seal)*             ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                        (use for out-of-state officer)
                     ☐ authorized to administer oaths.  (use for court-appointed server)

_____
Signature and Title

000014

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____ miles @ $ _____ per mile) |
| **Total** | $_____ | |

**See the following page for directions to clerk and to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

000015

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOSEPH L. WALSH III | **Case Number:  21SL-CC03080** |
| Plaintiff/Petitioner:<br>BEN DOGRA | Plaintiff's/Petitioner's Attorney/Address:<br>WILLIAM K. MEEHAN<br>7165 DELMAR, SUITE 112<br>UNIVERSITY CITY, MO  63130 |
| vs. | |
| Defendant/Respondent:<br>RUSTY HARDIN | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Pers Injury-Malpractice | |

*(Date File Stamp)*

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   RUSTY HARDIN AND ASSOCIATES, LLP
Alias:

**401 MCKINNEY STREET**
**SUITE 2250**
**HOUSTON, TX  77010**

*COURT SEAL OF*

*ST. LOUIS COUNTY*

    You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
    **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

    <u>08-JUL-2021</u>
    **Date**
    **Further Information:**
    **MT**

_____
/Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____    _____
    Printed Name of Sheriff or Server                Signature of Sheriff or Server
    **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
    I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                   ☐ the judge of the court of which affiant is an officer.
                   ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                     (use for out-of-state officer)
                 ☐ authorized to administer oaths.  (use for court-appointed server)
*(Seal)*

_____
                Signature and Title

000018

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $ _____ per mile) |
| **Total** | $_____ | |

*See the following page for directions to clerk and to officer making return on service of summons.*

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (7-04) SM60 *For Court Use Only*: **Document ID# 21-SMOS-671**     2     (21SL-CC03080)     Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

000019

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-04) SM60 *For Court Use Only*: **Document ID#  21-SMOS-671**      4      **(21SL-CC03080)**                              Rules 54.06, 54.07, 54.14, 54.20; 506.505; 506.510 RSMo

000021