UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BEN DOGRA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:21-cv-00949-JAR |
| vs. ) | |
| ) | |
| RUSTY HARDIN et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on two motions to quash subpoenas served on Plaintiff's counsel in this case involving claims of legal malpractice and breach of contract. The Court will deny the motions.

## BACKGROUND

Defendants Rusty Hardin and his law firm, Hardin & Associates, were among several lawyers and law firms who represented Plaintiff Ben Dogra, a sports agent, in arbitration proceedings against his former employer, CAA Sports, for wrongful termination. Plaintiff's lawyers in the present case, Jesse Kaplan and Bryan Freedman, were also part of his legal team in the arbitration. Plaintiff prevailed in those proceedings and received numerous awards, including over $2.75 million in damages for coaching contract revenues.[1] This amount was calculated by CAA's expert and accepted by Plaintiff in a brief filed in the arbitration in June 2016. According to Plaintiff, a subsequent audit suggested that he may have been entitled to

---

[1] CAA represents athletes and coaches and charges a commission on their earnings. Plaintiff's employment contract entitled him to a percentage of his football coach clients' revenues as part of his compensation.

significantly more, but the arbitrator found that Plaintiff had already stipulated to CAA's calculation and therefore declined to reconsider the award.

After the conclusion of arbitration, Plaintiff filed this lawsuit against Defendants – but not his other lawyers – for legal malpractice in connection with the stipulation and recovery of unearned fees. Plaintiff claims that Defendants alone were negligent in submitting the brief accepting CAA's damages calculation in 2016. Plaintiff also claims that Defendants ceased to represent him in October 2018, long before the arbitration was concluded, such that Plaintiff is entitled to a refund of a portion of Defendants' flat fee, which was meant to cover the entirety of proceedings.

In response to the complaint, Defendants assert that Plaintiff and his other lawyers in the arbitration were also involved in the discussions and reviews of the brief in question. Defendants further contend that they remained engaged for the duration of the process and never received notice to the contrary. Defendants have filed a counterclaim to recover a "success fee" payable upon a positive outcome in the arbitration. Given the nature of Plaintiff's allegations and the disputed period of engagement, Defendants have sought various forms of discovery from Plaintiff's other lawyers involved in the arbitration, including Kaplan and Freedman.

In earlier discovery litigation, Defendants sought production of documents and communications between Plaintiff and his other lawyers regarding CAA's termination of Plaintiff, the arbitration including CAA's audit and the calculation of damages, Defendants' representation, and the present lawsuit. Plaintiff objected on grounds of attorney-client privilege, particularly with respect to materials dated after the alleged termination of Defendants' engagement. Defendants filed a motion to compel, arguing that Plaintiff had waived privilege by placing his lawyers' performance at issue. (Doc. 20). Judge Hamilton agreed and explicitly

overruled Plaintiff's objection, directing Plaintiff to give "full and complete" responses to Defendants' requests. (Doc. 34).

As relevant here, Defendants also issued subpoenas to depose Plaintiff's lawyers, including Kaplan and Freedman, about their involvement in the arbitration and knowledge of events giving rise to Plaintiff's claim here. Kaplan and Freedman (together "Counsel") filed motions in the Central District of California to quash their subpoenas. That court transferred the motions to this Court for resolution in the present case. Counsel claim that they did not participate in any communications about Plaintiff's coaching contract damages and had limited involvement in the arbitration until 2020. Billing records document some activity by Freedman in 2015 and early 2016, and Kaplan appears in 2020. (Doc. 68-2). In March 2016, these billing statements show Freedman's consultations with Plaintiff around the time of Defendants' preparation of a settlement demand letter accepting CAA's calculation of contract coaching revenues in language similar to that at issue in this case. (Doc. 71-2 at p. 21, Doc. 71-3 at p. 6). In a brief submitted in 2020 on other damages, Counsel argued that Plaintiff had already forfeited millions of dollars in coaching contract revenues.[2] Defendants wish to question Counsel about what exactly they knew of Plaintiff's claim here and when they knew it.

## LEGAL STANDARDS

The federal rules confer broad discretion on the district court to decide when a protective order is appropriate and what degree of protection is required. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999). Rule 26 permits the court to protect a party or person from annoyance, embarrassment, oppression, or undue burden

---

[2] The record suggests that Freedman was the relationship partner on Plaintiff's matter, Kaplan was the principal drafter of the 2020 brief, and another lawyer, Kyle Evans, provided damages figures based on his knowledge of the audit.

3

or expense. Fed. R. Civ. P. 26(b)(2)(C) and (c)(1). Rule 45 instructs the court to quash or modify a subpoena if it subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(iv).

In *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986), the Eighth Circuit developed a three-prong test for deposing the opposition's attorney. A party must show that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case."[3] *Id.* at 1327. This difficult burden was intended to guard against harassment that prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Id.* at 1330.

However, in *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729–30 (8th Cir. 2002), the Circuit clarified that *Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case is crucial. *Id.* at 730. In *Pamida*, the plaintiff sought indemnification, including attorney fees, for losses incurred in an underlying case. The Circuit upheld enforcement of subpoenas for "relevant information uniquely known by *Pamida*'s attorneys about prior terminated litigation, the substance of which [was] central to the pending case." *Id.* at 731. Further, the Circuit found that *Pamida* had waived privilege by placing the work of its attorneys directly at issue in the case. *Id*.

---

[3] Given that Counsel originally briefed the present motions in California, where the Ninth Circuit has not adopted a standard on this issue, Counsel also cited to *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003), where the Second Circuit prescribed a flexible approach considering all relevant facts and circumstances. The Court sees no need to conduct an analysis under *Friedman* when Eighth Circuit precedent is on point and controlling.

In *Smith-Bunge v. Wisconsin Cent., Ltd.*, 946 F.3d 420, 423 (8th Cir. 2019), further differentiating *Shelton* and *Pamida*, the Eighth Circuit upheld the quashing of a subpoena in a wrongful termination case where the plaintiff sought to depose defense counsel about interviews with other employees regarding an earlier retaliation lawsuit by the same plaintiff.  In that case, the Circuit applied the higher standard of *Shelton* rather than *Pamida*, reasoning that the information was not peculiarly within counsel's knowledge, nor had the defendant waived privilege.

## DISCUSSION

### Parties' Arguments

Counsel concede that Defendants are entitled to "at least some otherwise privileged information from the arbitration" but argue that *Pamida* does not prescribe enforcement of the subpoenas here because Counsel do not have unique knowledge central to the present case and Defendants could obtain the same information from Plaintiff's other lawyers in the arbitration.  Counsel thus submit that *Shelton* applies here and defeats the subpoenas.  Additionally, Counsel invoke the general provisions of Rules 26 and 45 intended to protect against discovery abuses causing undue burden.  Fed. R. Civ. P. 26(b)(2)(C), 26(c)(1), and 45(d)(3)(iv).

Defendants, on the other hand, argue that *Pamida* applies here because the information sought relates to prior litigation, of which Counsel possesses unique knowledge central to the present suit.  Alternatively, Defendants assert that the subpoenas are proper even under *Shelton*'s higher standard because Counsel are the best and only source of information about their own actions and advice in the arbitration.  Defendants argue that Counsel's testimony is crucial because, although several lawyers were involved in Plaintiff's arbitration, Defendants are the only target of Plaintiff's malpractice claim here.  Further, and noting that Plaintiff has resisted

5

discovery throughout this litigation, resulting in orders to compel, Defendants submit that Plaintiff should not be permitted to benefit from a problem of his own making.

**Analysis**

Applying Eighth Circuit precedent to the posture of this case, the Court finds that Defendants are entitled to query Counsel's specific knowledge of facts from the prior arbitration giving rise to the present case. *Pamida* rather than *Shelton* applies when the information sought is "peculiarly within counsel's knowledge" and the client has waived privilege. *Smith-Bunge*, 946 F.3d at 423. As even Judge Abrams noted in his transfer order from California, this Court has already determined that Plaintiff's communications with his arbitration lawyers – including Kaplan and Freedman – are discoverable because Plaintiff waived privilege by placing his lawyers' conduct squarely at issue in this case.[4] Counsel concedes that Defendants are entitled to at least some otherwise privileged information.

Further, the Court finds notable that Plaintiff consulted Freedman in March 2016 around the time of the settlement demand containing language similar to the post-hearing brief on the issue of coaching contract revenues and that Kaplan later drafted the brief where it was mentioned again. Even if Kaplan was not directly involved in 2016, he knew the internal history of the arbitration. Put simply, Counsel cannot unilaterally declare their knowledge common or irrelevant. Given the sensitive nature of Plaintiff's allegations, Defendants have a right to ascertain the roles, decisions, and actions of each lawyer involved in the arbitration, including Counsel, as critical fact witnesses in the present case.

---

[4] See Case No. 4:22-mc-1023-JAR, Docs. 32 and 33 at p. 5. Without ruling on the matter, Judge Abrams also found unavailing Counsel's argument that their testimony would be cumulative to other sources.

6

Finally, Counsel have not persuaded the Court that protective relief is warranted under Rules 26 and/or 45. Counsel provide only conclusory, unverifiable assertions that the information sought by Defendants could be obtained more conveniently from other sources. But again, Plaintiff having placed the actions and failures of his lawyers squarely at issue in this case, Defendants are entitled to a first-hand account of their respective contributions and alleged concessions. Counsel do not contend, nor does the Court have any reason to believe, that their depositions would impose any logistical or financial burden on Plaintiff or themselves.

Accordingly,

**IT IS HEREBY ORDERED** that the motions to quash or for protective order filed by counsel Kaplan and Freedman are **DENIED**. (Docs. 73 and 76).

Dated this 29th day of December 2022.

*[signature]*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE